Fabian RUIZ, Petitioner–Appellant,

v.

Robert KUHLMANN, Respondent–Appellee.

No. 01–2432.

United States Court of Appeals, Second Circuit.

Sept. 4, 2003.

Brian Sheppard, New Hyde Park, NY, for Appellant.

Thomas S. Berkman, Assistant District Attorney, Queens County, (Richard A. Brown, District Attorney, John M. Castellano, Assistant District Attorney, on the brief), Kew Gardens, NY, for Appellee.

PRESENT: STRAUB, B.D. PARKER, and RAGGI, Circuit Judges.

## SUMMARY ORDER

Petitioner–Appellant Fabian Ruiz appeals from a judgment of the United States District Court for the Eastern District of New York (Frederick Block, *Judge*), dismissing his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. We granted a certificate of appealability as to whether (1) petitioner was procedurally

barred from raising an ineffective assistance claim,[1] and, if not, whether the claim has merit, and (2) whether petitioner's confrontation clause rights were violated by the admission of nontestifying co-defendants' written statements at his trial, *see Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and, if so, whether any error was harmless.

Petitioner was convicted after trial in April 1991 in New York State Supreme Court, Queens County, of one count of intentional murder in the second degree, one count of depraved-indifference (reckless) murder in the second degree, and one count of third-degree criminal possession of a weapon. *See* New York Penal Law ("NYPL") §§ 125.25[1], [2]; 265.02[4]. Petitioner was sentenced to concurrent terms of imprisonment of 21 years to life and 5 to fifteen years. The charges stemmed from the fatal shooting of Steve Vaval by petitioner, his brother Carlos Ruiz, David Cruz, and Orlando Ortega, during which petitioner and Carlos acted as shooters.

Petitioner was tried jointly with Cruz and Ortega after his motion for a severance was denied, and, during his trial, the prosecutor offered into evidence written statements made by Cruz and Ortega to police following the shooting. The statements directly implicated petitioner, but were redacted at trial to omit direct reference to him. This was achieved by changing his name to the neutral pronoun "guy," "this guy," "the other guy," or "guys," when referring to both him and Carlos, whose name was also redacted. On summation, however, the prosecutor used these statements as evidence against the petitioner arguing that he was one of the unidentified men to whom the redacted statements referred. He further argued that the testimony of one of the eyewitnesses, Charles Lamberti, should be credited because it was consistent with the testimony of another eyewitness, Thomas Vasquez, and with the written statements of the nontestifying co-defendants Cruz and Ortega. At other points, the prosecutor urged the jury, in considering petitioner's guilt, to read the co-defendants' statements, and cited various parts of the statements as corroborative of both the eyewitness testimony and of petitioner's guilt. In addition to the co-defendants' statements, the prosecutor's evidence at trial consisted of the eyewitness testimony of Lamberti and Vasquez, friends of the victim who had been present in the car with him during the shooting. Neither Cruz nor Ortega testified. The prosecutor also offered ballistics evidence supporting its theory and the eyewitnesses' accounts of how the shooting occurred.

During a pre-charge conference, the trial court denied petitioner's counsel's motion for dismissal of the depraved-indifference murder count on the ground that the evidence offered by the prosecutor that thirteen shots were fired could support only the conclusion that an intentional killing and not a reckless shooting had occurred.[2] After the court denied the motion, the prosecutor moved to have the jury charged in the alternative. The motion was also denied.

---

1. We note that respondent did not brief this issue in the District Court or on appeal. Accordingly, we consider it waived.

2. The motion was made by co-counsel and petitioner's counsel joined, claiming that the evidence was inconsistent with a theory of intentional murder: "If it's an intentional murder with the M.E.'s report, that states that there are thirteen bullet wounds, to the Ballistics who recovered seven and the testimony, if you believe the witnesses, it must be an intentional murder and it can't be a reckless depraved indifference causing the death of Steven Vaval."

Following his conviction, petitioner moved to set aside the verdict pursuant to New York Criminal Procedure Law ("NYCPL") § 330.30, citing *People v. Gallagher*, 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987),[3] claiming that his conviction of both reckless and intentional murder represented an inconsistent verdict. *See People v. Ruiz*, 151 Misc.2d 757, 758, 573 N.Y.S.2d 845 (1991). The trial court denied the motion, distinguishing *Gallagher* on the basis that the facts underlying petitioner's conviction could support, at different points, both a reckless shooting and an intentional one. 151 Misc.2d at 759, 573 N.Y.S.2d 845. The court, alternatively, found that the defendant had not "objected to the charge as it was given to the jury," or "object[ed] when the verdicts were read by the jury so as to allow the jury to rectify the conflict," and, accordingly, had not preserved the issue for review. *Id.* at 761, 573 N.Y.S.2d 845.

On direct appeal, petitioner claimed that it was reversible error for the jury to have been charged with, and to reach a verdict convicting him of, both intentional and reckless murder. The Appellate Division found the claim unpreserved for review and declined to address the argument in the interest of justice. *People v. Ruiz*, 207 A.D.2d 917, 918, 616 N.Y.S.2d 658 (2d Dep't 1994).

The Appellate Division agreed, however, with petitioner's claim that the denial of his motion for a severance and the admission of his nontestifying co-defendants' statements at trial violated his confrontation clause rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Id.* at 917. The court found that "the confessions were not sufficiently redacted so that, when coupled with

the two eyewitnesses' testimony, those confessions inferentially incriminated the nonconfessing defendant." *Id.* The court found, however, that the error was harmless, citing the "overwhelming evidence of [Ruiz's] guilt" excluding the co-defendants' confessions, and found that "there is no reasonable probability that the erroneously admitted evidence contributed to the conviction." *Id.* (quoting *People v. Hamlin*, 71 N.Y.2d 750, 530 N.Y.S.2d 74, 525 N.E.2d 719). The Court of Appeals denied petitioner leave to appeal. *People v. Ruiz*, 84 N.Y.2d 1015, 622 N.Y.S.2d 926, 647 N.E.2d 132 (1994).

In June 1997, the petitioner moved pro se to vacate his conviction, pursuant to NYCPL § 440.10(1)(h), on the basis that he was denied effective assistance of counsel by virtue of his lawyer's failure to (1) request that the trial court charge the jury on the intentional and reckless murder counts in the alternative; (2) object to the charge being made in the conjunctive; and (3) move to set aside the verdict before the discharge of the jury. The trial court denied the motion, ruling that trial counsel may have chosen not to object to the charge for strategic reasons, "perhaps in the hope that the jury would become confused by the two murder charges and become deadlocked," and, in any event, that there had been no *Gallagher* error, citing its earlier decision rejecting the argument. The Appellate Division denied leave to appeal.

In November 1997, petitioner filed this habeas petition pro se in the United States District Court for the Eastern District of New York, claiming that (1) the *Bruton* error recognized by the Appellate Division was not harmless, and (2) his counsel was ineffective for not preserving the *Galla-*

---

**3.** *Gallagher* held that where a defendant was charged with a single murder, the failure to submit counts of intentional and depraved-indifference murder to the jury in the alternative was reversible error. 69 N.Y.2d at 531, 516 N.Y.S.2d 174, 508 N.E.2d 909.

*gher* objections. The District Court appointed counsel and subsequently denied the petition on the merits. The court agreed with the Appellate Division that petitioner's confrontation clause rights were violated by the prosecutor's identification, in his summation, of petitioner as one of the individuals to whom the redacted statements referred, but found that any error was harmless. With respect to the ineffective assistance claim, the court found, applying the *Strickland* factors, that petitioner's counsel's decision not to object on *Gallagher* grounds may have been strategic and was not unreasonable, and that, in any event, there was no prejudice in light of the "overwhelming evidence" of petitioner's guilt. *See Strickland v. Washington,* 466 U.S. 668, 687–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court denied petitioner a certificate of appealability. We granted a certificate of appealability as to petitioner's ineffective assistance claim and the alleged *Bruton* violation.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, a writ of habeas corpus may not be granted with respect to a state court decision that has "adjudicated [a petitioner's claims] on the merits" unless the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d), (d)(1).

■ We agree with the District Court that petitioner's counsel was not ineffective. Counsel's failure to object to the jury's being charged on the intentional and reckless murder counts in the conjunctive, rather than in the alternative, as well as counsel's failure to move to set aside the verdict before discharge of the jury, may have reflected sound trial strategy and was not unreasonable. *See Strickland,* 466 U.S. at 687–92, 104 S.Ct. 2052. As an initial matter, counsel could have reasonably believed that the *Gallagher* objection was preserved both by his motion to have the depraved indifference count dismissed as being inconsistent with the evidence, which counsel claimed supported only intentional murder, and by the prosecutor's subsequent request, immediately following that colloquy, to have the jury charged in the alternative on the murder counts.[4] Moreover, counsel's failure to object to the charge as given or move to set aside the verdict before the jury was discharged may have reflected a reasonable strategic judgment that petitioner's chances of having the conviction overturned on either a motion to set aside the verdict or direct appeal were favorable.[5] On the other hand, if counsel had raised the claim before the jury was discharged, the judge likely would have asked the jury, which had already convicted petitioner on two counts of murder, to reconcile its verdict and convict him on only one count, resulting in a murder conviction in respect of which this claim of error would have been unavailable on appeal.

■ Turning to the *Bruton* claim, the respondent argues that the Appellate Division erred in finding a *Bruton* violation, and that, in any event, any *Bruton* violation was harmless. Because the prosecution, in summation, did urge the jury to

---

4. Specifically, the prosecutor stated that he did not "want a verdict where you can have an intentional murder and depraved indifference murder. It's one theory or another theory."

5. The fact that none of the three experienced trial co-counsel trying the case objected to the charge as given supports the inference that the omission was a strategic decision, which decision was sound.

consider the redacted co-conspirator statement against petitioner, there was plainly a *Bruton* error. *See Bruton v. United States,* 391 U.S. 123, 125, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

But we also conclude that in light of the compelling eyewitness testimony identifying petitioner as one of the shooters, the Appellate Division's conclusion that any error was harmless was not contrary to, nor an unreasonable application of, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which requires that there be no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman,* 386 U.S. at 23, 87 S.Ct. 824.[6] Lamberti and Vasquez both testified that they saw petitioner standing at the passenger side of Lamberti's car aiming a gun at the victim moments before he was shot as he sat in the car. While Lamberti testified that after the shooting began he was ordered out of the car and instructed to lie on the ground, and therefore could no longer actually see the shooting, Vasquez testified that he remained in the back seat of the car throughout the shooting and actually saw petitioner shoot the victim. In light of this testimony, the Appellate Division's conclusion that any *Bruton* error was harmless was not contrary to, nor an unreasonable application of, *Chapman.*

We have considered petitioner's remaining arguments and find them without mer-

---

it. Accordingly, the judgment of the District Court is AFFIRMED.

---

**6.** *Chapman* is the harmlessness standard generally applied to findings of constitutional trial error on direct appellate review. We recognize that courts have questioned, since the passage of the AEDPA, whether the appropriate harmlessness standard on habeas review is a mixed AEDPA/*Chapman* standard, which requires the habeas court to determine, as we have, whether the state appellate court's finding of harmlessness was contrary to, or an unreasonable application of *Chapman,* or whether, instead, habeas courts should undertake a de novo application of *Brecht v. Abra-*

hamson, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the harmlessness standard that applied, pre-AEDPA, to cases on collateral review, which requires a determination that the evidence did not "ha[ve] a substantial and injurious effect or influence in determining the jury's verdict." *See, e.g., Ryan v. Miller,* 303 F.3d 231, 253–54 (2d Cir.2002). Because we conclude that a finding of harmlessness would result here under either standard, we decline, as this Circuit has before, to decide which one applies. *See, e.g, id.* at 254.